**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MALCOLM HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 6821 |
| | ) | |
| UNITED AIRLINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Malcolm Hamilton ("Plaintiff" or "Hamilton") originally filed his complaint in the Circuit Court of Cook County. Defendant United Airlines ("Defendant" or "United") timely removed. Presently before us is Plaintiff's Motion to Remand (Dkt. No. 15), filed on September 20, 2012, pursuant to 28 U.S.C. § 1447(c).[1]

The Federal Airline Deregulation Act ("FADA") explicitly preempts state regulation "related to" an airline's "price, route, or service." 49 U.S.C. § 41713(b)(1) (2007). Plaintiff argues that removal under 28 U.S.C. § 1441(a) was improper because his claims for whistleblowing, retaliatory discharge, and a declaratory judgment are "at best peripherally" related to United's prices, routes, or services.[2] (Mot. at 1.) Further, Plaintiff argues that the

---

[1] In addition, on August 31, 2012, Defendant filed a Motion to Dismiss (Dkt. No. 7) pursuant to Federal Rule of Civil Procedure 12(b)(6). Since Plaintiff's Motion to Remand requires us to determine whether we have subject matter jurisdiction to hear this case, we address it first. If we find in the negative, we must decline to rule on Defendant's motion altogether.

[2] Both parties quote the language of FADA's preemption clause as "rate, route, or service." That language was effective prior to 1994, when Congress amended the FADA preemption clause to read "price, route, or service." *Travel All Over the World v. Saudi Arabia,* 73 F.3d 1423, 1430, n.7 (7th Cir. 1996). Congress did not intend the amendment to make any substantive change to the meaning of the clause. *Id.* We use both versions interchangeably.

Whistleblower Protection Program ("WPP") amendment to FADA does not expand the statute's preemptive force to include all whistleblowing claims relating to air safety. (*Id.* at 8.) Defendant argues that FADA expressly preempts Plaintiff's state law claims because: 1) they relate to United's "safety obligations, rates routes and services," (Notice of Removal ¶ 12); and 2) "resolution of the claims requires an examination of United's policies vis-à-vis federal law and regulations." (Resp. at 8.) In addition, Defendant suggests that the WPP amendment to FADA bolsters the inference for preemption and provides an exclusive federal remedy for Plaintiff's claims. (Notice of Removal ¶ 11.)

For the reasons set forth below, we grant Plaintiff's Motion to Remand.

## BACKGROUND

United employed Hamilton from October 4, 1997 to July 12, 2010. For at least the last three years prior to his discharge, Hamilton was a flight attendant. (Compl. ¶¶ 6–8.) Hamilton alleges United fired him in retaliation for reporting what he believed to be United's violations of Federal Aviation Administration ("FAA") regulations to an FAA official. (*Id.* ¶ 55.) As a flight attendant, Hamilton recorded each flight's "holding time," the time between landing the aircraft, deplaning passengers, cleaning the cabin, and re-boarding new passengers. (*Id.* ¶¶ 9–11.) FAA regulations mandate that "when an aircraft carrying commercial passengers arrives at an airport terminal, an inspection of the aircraft and a headcount be conducted before additional commercial passengers may board the aircraft" and guide United's internal "holding time" regulations. (*Id.* ¶ 13.) Sometime in 2009, while waiting to assist a wheelchair bound passenger in deplaning, Hamilton observed that new passengers had already begun to board. (*Id*. ¶¶ 29–30.) Hamilton directed an FAA official standing nearby to observe the behavior. (*Id*.

¶ 32.) The FAA official interviewed Hamilton about United's practice, recorded his name and badge number, and spoke with the aircraft's pilot. (*Id*. ¶¶ 35–36.)

Hamilton alleges that after this incident, United accused him of inflating his "holding time" records to increase his pay and summoned him to several meetings with United's human resources department where United attempted to exert pressure on him to admit that he had recorded the time inaccurately. (*Id*. ¶¶ 39–43.) Hamilton ultimately refused to make that admission and United terminated him. (*Id.* ¶¶ 43–44.) Hamilton argues that United had no lawful reason to fire him. (*Id.* ¶¶ 47–53.) He has brought suit alleging violations of the Illinois Whistleblower Act 740 ILCS 174/1 and common law retaliatory discharge, and seeks a declaratory judgment under 735 ILCS 5/2-701 ordering United, *inter alia*, to admit it had no legitimate reason to fire Hamilton and to amend his employee file to omit any negative entries. United removed the case to this court under the theory of "complete preemption" (Notice of Removal ¶¶ 10–13) and now seeks dismissal of the complaint under Rule 12(b)(6).

## STANDARD OF REVIEW

The "well-pleaded complaint" doctrine guides jurisdictional matters. *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13, 57 S. Ct. 96, 97–98 (1936). The "allegations of the complaint determine whether the claim arises under state or federal law," making the plaintiff "master of his pleadings." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1075 (7th Cir. 1992); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1987). Ordinarily, federal preemption is a defense to a plaintiff's suit and, as such, does not authorize removal because it does not appear on the face of the complaint. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S. Ct. 1542, 1546 (1987); *Bartholet*, 953 F.2d at 1075. An exception to both rules

exists "when a federal statute wholly displaces the state law cause of action through complete pre-emption . . . [such that] a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S. Ct. 2058, 2063 (2003); *see also Turek v. General Mills, Inc.*, 662 F.3d 423, 425 (7th Cir. 2011). In such a case, the "federal law so fills every nook and cranny that it is not possible to frame a complaint under state law." *Bartholet*, 953 F.2d at 1075.[3]

In cases of complete preemption, a defendant may remove the claim to district court pursuant to 28 U.S.C. §1441(a) because the district court has original jurisdiction of the claim as it "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *Davila*, 542 U.S. at 207, 124 S. Ct. at 2495. A defendant bears the "burden of establishing

---

[3] The Supreme Court has found two statutes to have such extraordinary preemptive effect: § 301 of the Labor Management Relations Act ("LMRA") and certain sections of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See Beneficial Nat'l Bank*, 539 U.S. at 8, 123 S. Ct. at 2063; *see also Metro. Life Ins.*, 481 U.S. at 64, 107 S. Ct. at 1546 (citing *Avco Corp. v. Machinists*, 390 U.S. 557, 88 S. Ct. 1235 (1968) in regard to the complete preemptive effect of LMRA) *and Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S. Ct. 2495, 2488 (2004) (stating that ERISA is a statute with complete preemptive effect). Even under these statutes, however, there are exceptions. For example, if a state common law claim for retaliatory discharge can be resolved without interpreting the collective bargaining agreement, it is not preempted under LMRA. *See Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 421, 108 S. Ct. 1877, 1883 (1988); *Hughes v. United Air Lines, Inc.*, 634 F.3d 391, 394 (7th Cir. 2011). For ERISA exceptions *see, e.g.*, *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 481 U.S. 58, 17 S. Ct. 1542 (1987) (holding a suit about a welfare trust's liability to state taxes not preempted). Both parties seem to urge us to make our determination by analogizing to either: 1) exceptions under the LMRA (Reply at 10); or 2) the broad preemptive application of ERISA, (Resp. ¶ 10). We decline to adopt as analogous to disputes under FADA the case law surrounding either statute. We find other reasoning more persuasive. In addition, although the Supreme Court analogized to ERISA when interpreting FADA's "related to" language, *Morales v. TWA,* 504 U.S. 374, 383–84, 112 S. Ct. 2031, 2037 (1992), the Seventh Circuit has not considered that reliance to mean that the Supreme Court has extended its ERISA jurisprudence to the air transportation field. *S.C. Johnson, Inc. v. Transp. Corp. of America*, No. 11-3577, 2012 U.S. App. LEXIS 19835, at *23 (7th Cir. Sept. 21, 2012); *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 608 (7th Cir. 2000).

federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. LA Weight Loss Ctrs., Inc.,* 577 F.3d 752, 758 (7th Cir. 2009).

## ANALYSIS

In this case, Hamilton's claims would be completely preempted and give rise to federal subject matter jurisdiction if: 1) they relate to United's prices, routes, or services; or 2) Congress, through WPP, expressed a "clear and manifest" intent to occupy the field of whistleblowing regulation pertaining to air safety complaints so fully that no state claim can exist alongside them.

**I.      Hamilton's claims are not related to United's prices, routes, or services.**

The "touchstone" of federal preemption is Congressional intent. *Travel All Over the World*, 73 F.3d at 1430. Congress may manifest its intent to displace state law from a particular field by: 1) expressly including relevant language in the statute; or 2) through inference "contained in [the statute's] structure and purpose." *Morales,* 504 U.S. at 383, 112 S. Ct. at 2036 (internal citations and quotations omitted). FADA's express preemption clause provides:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. 41713(b)(1). Congress passed FADA to "promote maximum reliance on competitive market forces." 49 U.S.C. 40101(a)(6); *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 230, 115 S. Ct. 817, 824 (1995). Congress wanted to "ensure that the States would not undo federal deregulation with regulation of their own." *Morales,* 504 U.S. at 378, 112 S. Ct. at 2034.

Based on the plain language of the statute, the Supreme Court held that Congress "express[ed] a broad pre-emptive purpose" in the area of airline regulation. *Morales,* 504 U.S. at 383, 112 S. Ct. at 2037. Thus, FADA preempts any state law or enforcement action that has "a connection with or reference to, airline 'rates, routes, or services.'" *Id.* at 384, 112 S. Ct. at 2037. However, "'some state action may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have preemptive effect." *Id.* at 390, 112 S. Ct. at 2040 (quoting *Shaw v. Delta Airlines*, 463 U.S. 85, 100, n.21, 103 S. Ct. 2890, 2901, n.21 (1983)); *Travel All Over the World*, 73 F.3d at 1431.

Under Seventh Circuit jurisprudence, a state law or action "'relates to' airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them." *Travel All Over the World*, 73 F.3d at 1432; *Mesa Airlines,* 219 F.3d at 609. Thus, laws of general applicability, such as the Illinois Whistleblower Act, may still be preempted by FADA if they significantly impact an airline's prices, rates, or services. Yet even broadly preemptive statutes do not reach all claims related to their subject matter. The "broad applicability of the preemption statutes should be understood in light of their deregulatory purpose." *S.C. Johnson,* 2012 U.S. App. LEXIS 19835, at *41.

### A. *Leading Supreme Court and Appellate Interpretations of FADA*

The Supreme Court has considered FADA preemption three times. In *Morales*, the Court held the marketing guidelines promulgated by the National Association of Attorneys General preempted by FADA because the guidelines not only expressly referred to airline fares but because any "state restrictions on fare advertising have the forbidden significant effect upon fares." *Morales*, 504 U.S. at 388, 112 S. Ct. at 2039. In *Wolens*, the Supreme Court found that

the Illinois Consumer Fraud Act impermissibly "guide[d] and police[d] the marketing practices of the airlines" and, thus, FADA preempted its enforcement. *Wolens,* 513 U.S. at 228, 115 S. Ct. at 823. In *Rowe*,[4] the Court held a state law preempted because it "produce[d] the very effect that the federal law sought to avoid, namely, a State's direct substitution of its own governmental commands for 'competitive market forces' in determining (to a significant degree)" what services should be provided. *Rowe*, 552 U.S. at 372, 128 S. Ct. at 995 (internal citation omitted). In all three cases, grounded by legislative history, the Supreme Court emphasized that FADA prohibits state interference with an airline's role as competitor in the air travel market. It remains an open question how the Supreme Court may interpret FADA preemption when airlines act in other roles, such as employers. Language in *Rowe* indicates that the analysis and effect of the law may be different. *See Rowe*, 552 U.S. at 375, 128 S. Ct. at 997 (noting that a state law may not be preempted if it affects truck drivers solely as members of the public).

The Seventh Circuit has not had the opportunity to rule on FADA's (and WPP's) preemptive effect on state whistleblower statutes or retaliatory discharge claims. In most of its cases to this point, the Seventh Circuit has resolved disputes between contractual parties under various breach of contract and tort theories. *See S.C. Johnson*, 2012 U.S. App. LEXIS 19835, at *2 (reversing the judgment of the district court finding preemption on all counts and remanding

---

[4] This case concerned the preemptive effect of the Federal Aviation Administration Act ("FAAA"), not FADA. However, the preemption language in FAAA exactly mirrors that in FADA. *Compare* 49 U.S.C § 14501(c)(1) *with* 49 U.S.C. § 41713(b)(1). In *Rowe*, the Supreme Court followed the principles established in *Morales* because "when judicial interpretations have settled the meaning of an existing statutory provision repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretation as well." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370, 128 S. Ct. 989, 994 (2008) (internal citation and quotation omitted). The Seventh Circuit has adopted the same approach when evaluating the FAAA. *See S.C. Johnson*, 2012 U.S. App. LEXIS 19835, at *19.

with instructions that fraudulent misrepresentation and conspiracy to commit fraud claims were preempted but bribery and racketeering claims were not); *ATA Airlines, Inc. v. Fed. Express Corp.,* 665 F.3d 882, 883 (7th Cir. 2011) (reversing district court's ruling that a claim of promissory estoppel is preempted); *Mesa Airlines,* 219 F.3d at 609–611 (affirming district court's order finding preemption for claims of fraudulent inducement, breach of fiduciary duties, and tortious interference with contract); *Travel All Over The World,* 73 F.3d at 1432–4 (reversing district court's ruling finding preemption on all counts, with guidance on remand that breach of contract, slander, and defamation claims were not preempted, while claims for tortious interference, intentional infliction of emotional distress, and fraud were preempted). In all these cases, the common focus was whether the state is in any way attempting to insert itself into the parties' bargain and substitute its own substantive determinations for theirs. *See, e.g., S.C. Johnson*, 2012 U.S. App. LEXIS 19835, at *35–6, *38; *ATA Airlines,* 665 F.3d at 884; *Mesa Airlines*, 219 F.3d at 610; *Travel All Over the World*, 73 F.3d at 1435.

The majority of other circuits that have analyzed the effect of FADA on state whistleblower statutes have not found preemption under FADA's express preemption clause. *See Ventress v. Japan Air Lines,* 603 F.3d 676, 683 (9th Cir. 2011); *Gary v. Air Group, Inc.,* 397 F.3d 183, 189 (3d Cir. 2005); *Branche v. AirTran Airways, Inc.,* 342 F.3d 1248, 1250 (11th Cir. 2003).[5] These circuits agreed that the whistleblower claims were too tenuously related to an

---

[5] These cases dealt with preemption as a defense rather than with complete preemption as basis of federal jurisdiction because, there, diversity jurisdiction existed. *See, e.g., Gary*, 397 F.3d at 185–86. For that reason, Defendant argues that the cases' findings are not dispositive and, even though they might be informative, do not apply to the present controversy. (Resp. at 5, 8.) We agree that the cases are not dispositive but we do find them relevant. The analysis that courts undergo for complete preemption does not seem to differ markedly from that of other forms of preemption. *Compare, e.g., Bartholet*, 953 F.2d at 1076–7 (analyzing whether ERISA completely preempts plaintiff's state law claim) *with Gary*, 397 F.3d at 189–90 (analyzing

airline's prices, routes, or services. *See Ventress,* 603 F.3d at 683; *Gary,* 397 F.3d at 189; *Branche,* 342 F.3d at 1260, 1263. In addition, our district court has agreed that FADA does not preempt a plaintiff's retaliatory discharge claim. *Meyer v. United Airlines, Inc.,* 624 F. Supp. 2d 923, 932 (N.D. Ill. 2008).[6]

The Eighth Circuit alone has held that FADA preempts the application of a state whistleblower statute to airline safety claims.[7] *Botz v. Omni Air Int'l,* 286 F.3d 488, 490 (8th Cir. 2002). The state statute at issue in *Botz* empowered flight attendants to refuse assignments, which according to the court jeopardized an airline's "ability to complete its scheduled flight," thus interrupting airline services. *Id.* at 494–95. The court compared this statute to the advertising guidelines in *Morales* and stated that, in both cases, a state "attempt[ed] to impose [its] own public policies or regulatory theories on an air carrier's operations, an imposition that Congress intended the ADA to pre-empt." *Id.* at 495. The other circuits distinguished the claims

---

whether FADA preempts plaintiff's state whistleblower claim on a motion to dismiss).
[6] Procedurally, *Meyer* did not concern complete preemption. There, the plaintiff's Family and Medical Leave Act claim provided subject matter jurisdiction, and the court exercised supplemental jurisdiction to hear the retaliatory discharge claim. *See Meyer*, 624 F. Supp. 2d at 925.
[7] Defendant argues that a Tenth Circuit case, *Turgeau v. Admin. Rev. Bd.,* 446 F.3d 1052 (10th Cir. 2006), also supports its position on preemption by implicitly affirming a favorable district court judgment. (Resp. at 5.) That interpretation stretches the Tenth Circuit's holding. The circuit court was not deciding directly on the summary judgment motion entered by the district court below, which held in favor of FADA preemption of a state wrongful discharge claim. Rather, it ruled on the plaintiff's appeal of the administrative complaint filed with the Secretary of Labor after the dismissal of the plaintiff's claim by the district court. *Turgeau,* 446 F.3d at 1055. The circuit court was statutorily empowered to hear that case. *See* 49 U.S.C. § 42121(b)(4)(A). The Tenth Circuit did not analyze the jurisdictional issue anew, but rather expressed agreement with the district court's ruling in the context of equitable tolling. *See Turgeau*, 446 F.3d at 1061. We do not know how the Tenth Circuit would have ruled on the jurisdictional issue had it been presented to the court directly.

before them from those in *Botz* on the grounds that the conduct underlying them did not interrupt airline services. *See, e.g., Gary,* 397 F.3d at 189.

## B. Application

We conclude that Hamilton's whistleblower and retaliatory discharge claims are not preempted by FADA's express preemption language. His claims are too tenuously related to any price, route, or service provided by United to its customers. As the Seventh Circuit directs, we look to the "underlying facts" of this case to determine whether there is preemption under FADA. *See Travel All Over the World*, 73 F.3d at 1432.

Defendant argues that Plaintiff's claims are related to "United's safety obligations, rates, routes and services" because: 1) length of "holding time" affects United's operating costs and the time of departure of each flight and, consequently, the rates that United charges its customers; 2) "holding time" affects the safety of the flight and is thus "service priority number one for any airline;" and 3) it cannot be separated from the federal regulations on "holding time" requiring "review and analysis of the FAA regulations governing holding time" by the state court. (Notice of Removal ¶ 12; Resp. at 4.) Defendant mischaracterizes Hamilton's claims.

First, Plaintiff's claims stem purely from his employment relationship with United, affecting Defendant in its role as employer rather than as airline competitor. *Rowe*, 552 U.S. at 375, 128 S. Ct. at 997; *DiFiore v. American Airlines, Inc.,* 646 F.3d 81, 87 (1st Cir. 2011) ("[T]he Supreme Court would be unlikely—with some possible qualifications—to free airlines from most conventional common law claims for tort, from prevailing wage laws, and ordinary taxes applicable to other businesses.").[8] Both the whistleblower statute and the common law

---
[8] The First Circuit arrived at its conclusion by looking to federal appellate court cases on employment discrimination, *DiFiore*, 646 F.3d at 87, n.6, whistleblower claims, *id.* at 87, n.7,

claim of retaliatory discharge "operate one or more steps away from the moment at which the firm offers its customer a service for a particular price." *S.C. Johnson*, 2012 U.S. App. LEXIS 19835, at *39. Although the application of these laws may, in the aggregate, affect the cost of an airline's work force and, thus, indirectly the price or service they provide to customers, they affect United as an employer and do not render uncompetitive any area of its business. Other courts have found that labor laws, such as a state prevailing wage statute, are not preempted by FADA. *See, e.g., Californians for Safe and Competitive Dump Truck Trans. v. Mendonca*, 152 F.3d 1184, 1188 (9th Cir. 1998).

Second, it is unclear whether "holding time" falls squarely within the Seventh Circuit's definition of "service." The Seventh Circuit defined "service" as "generally represent[ing] a bargained-for or anticipated provision of labor from one party to another . . . lead[ing] to a concern with the contractual arrangement between the airline and the user of the service." *Travel All Over The World,* 73 F.3d at 1433 (adopting the Fifth Circuit's definition of "service" in *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir. 1995)). These bargained-for elements include transportation, "ticketing, boarding procedures, provision of food and drink, and baggage handling." *Id.* Hamilton's claims do not impact any contractual agreements between United and its customers.

Hamilton's claims are at least one step removed from the services for which passengers bargain directly with the airline. In his state suit, he is not challenging the "holding time" procedures themselves. Rather, he is challenging the reasons for his discharge. Neither the fact that he may or may not have been discharged unlawfully, nor the relief he seeks as remedy,

---

and personal injury claims, *id.* at 87, n.8, none of which found preemption by FADA.

would significantly impact the customer-airline bargain. Hamilton is not seeking injunctive relief directing United to act in any particular way toward its customers. As Judge Kendall has previously held, if a plaintiff seeks no injunctive relief and the relief which he does seek does not result in a binding judicial finding as to how an airline should maintain or service its aircraft, there is no impact on airline services. *See Meyer,* 624 F. Supp. 2d at 931.

Defendant argues that "holding time" is an element of air safety. (Notice of Removal ¶ 12.) It is arguable whether "safety" equates to "service." The Seventh Circuit has not given an opinion on this matter. It has relatedly ruled that a tort action against an airline for a crash that raises issues of air safety may be litigated in state court. *See Bennett v. Southwest Airlines Co.,* 484 F.3d 907, 912 (7th Cir. 2007). The Seventh Circuit rejected the position that air-crash litigation, even though implicating federal aviation standards, necessarily arises under federal law. *Id.* at 911. It opined that the tort litigation required the resolution of "fact-bound question[s]" in regard to the pilot's behavior before the crash rather than a "context-free" inquiry into federal law. *Id.* at 909, 911. This analysis is instructive here. Resolution of Hamilton's claims will turn on specific factual inquiries into United's behavior surrounding his discharge rather than an evaluation of FAA regulations.

In addition, the Eleventh Circuit has held that safety is not an element over which airlines compete but is an implicit understanding that each airline undertakes to ferry its passengers safely to their chosen destination. *See Branche*, 342 F.3d at 1260. We find this reasoning persuasive, especially when considered alongside the passage of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106–181, 114 Stat. 61 (codified as amended in scattered sections of 49 U.S.C.), which introduced the WPP program. The relevant

legislative discussion reveals that Congress considered safety a non-negotiable part of air travel. *See, e.g.,* 146 Cong. Rec. 1255, 1257 (2000) ("As our skies and runways become more crowded than ever, it is crucial that we redouble our commitment to safety. Passengers deserve the most up to date in safety measures."). Congress presumably would not tolerate airlines competing for passengers by offering lower prices in exchange for acceptance of a greater safety risk or vice-versa. For all the abovementioned reasons, Hamilton's claims are not related to United's prices, routes, or services.

Third, and as alluded to earlier, a state court judge entertaining Hamilton's claims would not need to make any definitive factual finding regarding United's actual compliance with FAA regulations on "holding time." Under the Illinois Whistleblower Act, a state court need determine only whether: 1) Hamilton's belief that a violation had occurred was "reasonable;" and 2) whether reporting this belief caused his discharge. *See* 740 ILCS 174/15 (2012). Logically, a judge would need to reference the federal regulations for context but she would not need to rest her analysis on, or adjudicate United's actual compliance with, the regulation. The mere reference to a federal rule does not mandate a conclusion of complete preemption or otherwise create subject matter jurisdiction in this case.

Similarly, in Illinois, the success of a claim for retaliatory discharge does not rest on the actual unlawfulness of the underlying conduct. *Belline v. K-Mart Corp.*, 940 F.2d 184, 188 (7th Cir. 1991); *Palmateer v. Int'l Harvester Co.*, Ill.2d 124, 132–33, 421 N.E.2d 876, 880 (1981). Hamilton need not prove that United actually violated federal regulations, only that he "reasonably believed" a violation had occurred at the time of his whistleblowing. *See Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000) (citing *Belline*, 940 F.2d at 188). In

adjudicating the retaliatory discharge claim, a state court must decide whether the discharge violated a clear mandate of public policy. *Belline*, 940 F.2d at 186. A state court may choose to look to federal law when making that decision. *See Brandon v. Anesthesia & Pain Mgmt. Assocs.*, 277 F.3d 936, 942 (7th Cir. 2002) (citing *Russ v. Pension Consultants Co.*, 182 Ill. App. 3d 769, 775, 538 N.E.2d 693, 697 (1st Dist. 1989); *Johnson v. World Color Press, Inc.*, 147 Ill. App. 3d 746, 748–49, 498 N.E.2d 575, 576 (5th Dist. 1986); and discussing *Wheeler v. Caterpillar Tractor Co.,* 108 Ill. 2d 502, 485 N.E.2d 372 (1985)). Still, the possibility that a federal law may be discussed as part of public policy analysis is not enough to grant federal question jurisdiction in this case.

II.     **Congress did not showcase a clear and manifest intent to wholly preempt state whistleblower claims through its passage of WPP.**

Even if not expressly preempted under FADA, Defendant argues that the inclusion of WPP within the FADA regulatory scheme manifests a clear intent on the part of Congress to preempt all state whistleblower claims in regard to air safety. (Notice of Removal ¶ 11). We disagree.

Where an explicit preemption clause exists, it is generally unnecessary "'to infer congressional intent to pre-empt state laws from the substantive provisions. . . . Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S. Ct. 2608, 2618 (1992) (citing *Cal. Fed. Savings & Loan Assn. v. Guerra*, 479 U.S. 272, 282, 107 S. Ct. 683, 690 (1987)). Further, federal courts should not infer preemption lightly in matters traditionally carried out under a state's police power, such as employment. *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 21, 107 S. Ct. 2221, 2223 (1987). In a case where the field said to be

preempted includes areas of traditional state power, Congress must display "clear and manifest" intent to supersede state laws. *English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S. Ct. 2270, 2274 (1990) (internal citations omitted).

In 1999, Congress amended FADA by incorporating WPP, which provided federal administrative protection to airline employees for reporting alleged air safety violations. 49 U.S.C. § 42121(a)(1) (2007).[9] The WPP does not include an express preemption conclusion, nor was FADA's preemption clause expressly amended or expanded pursuant to the passage of the WPP.

Three circuits agree that the addition of WPP did not expand FADA preemption, for two reasons. *Ventress*, 603 F.3d at 683; *Gary*, 397 F.3d at 190; *Branche*, 342 F.3d at 1264. The WPP created an additional, rather than an exclusive, remedy. *See, e.g., Branche*, 342 F.3d at 1264.[10] First, "the plain language of the WPP is wholly silent on preemption," which renders

---

[9] The WPP states:

> No air carrier or contractor or subcontractor of an air carrier may discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee) –
>
> (1) provided, caused to be provided, or is about to provide (with any knowledge of the employer) or cause to be provided to the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States; does not include a separate preemption provision and the FADA preemption statute was not amended to incorporate explicitly whistleblower claims.

[10] The Eighth Circuit disagreed and held that WPP provided "powerful evidence of Congress's clear and manifest intent to pre-empt state-law whistleblower claims related to air safety." *Botz*, 286 F.3d at 496.

Congressional intent "ambiguous at best and thus should not serve as a basis for expanding ADA preemption." *See, e.g., Gary*, 397 F.3d at 190. The section of the WPP that empowers employees to file complaints with the Secretary of Labor does not indicate that it is an employee's sole remedy. *See* 49 U.S.C. § 42121(b)(1). Currently, that section reads:

> A person who believes that he or she has been discharged or otherwise discriminated against by any person in violation of subsection (a) *may*, not later than 90 days after the date on which such violation occurs, file (or have any person file on his or her behalf ) a complaint with the Secretary of Labor alleging such discharge or discrimination.

49 U.S.C. § 42121(b)(1) (emphasis added). Had Congress intended the WPP to be an exclusive remedy, it likely would have chosen strong language to mandate it. Later in the same section, for example, Congress directs that the Secretary of Labor "*shall* notify, in writing, the person named in the complaint." 49 U.S.C. § 42121(b)(1) (emphasis added). This usage of both permissive and commanding verbs in the same section shows Congress's awareness of the differing impact of the two. There is no reason to infer that Congress meant for both verbs to mean the same thing. Our district has previously agreed. *See Meyer*, 624 F. Supp. 2d at 930 ("[T]his Court adopts an interpretation of the WPP that remains true to the text of FADA: a cause of action under the WPP preempts a state retaliatory discharge cause of action when the claim relates to airline prices, routes, or services.").

Second, "courts should not lightly infer preemption . . . especially in the employment law context" as it falls within a state's traditional state powers. *See, e.g., Gary*, 397 F.3d at 190. In our opinion, the legislative record does not indicate a "clear and manifest" intent on the part of Congress to preempt all state laws as they relate to air safety whistleblowing. In passing this section, Congress discussed the importance of protecting whistleblowers in order to enhance air

safety. *See* 146 Cong. Rec. S. 1255, 1257 (2000) ("We also have provided whistleblower protection to aid in our safety efforts and protect workers willing to expose safety problems."). However, Congress did not promote WPP as an exclusively federal remedy that would facilitate that goal better than the availability of both state and federal forums for whistleblowing claims.

All in all, the existence of two plausible alternatives reveals that Congress's intent is not so "clear and manifest" as to fully displace state law in this case. Given this ambiguity, we join the Third, Ninth, and Eleventh Circuits, and Judge Kendall, in deciding that—without Supreme Court or Seventh Circuit guidance to the contrary—WPP did not expand FADA's preemption scope.[11]

---

[11] On a related note—even if Congress had intended WPP to completely preempt all state whistleblowing claims—a district court would not be the most appropriate venue. If we accept that WPP is a detailed and comprehensive regulatory scheme, then aggrieved employees should follow the procedure it has set out for the filing and adjudication of the claims it governs. Under WPP, an employee first files a complaint with the Secretary of Labor, not a district court. 49 U.S.C. § 42121(b)(1). The Secretary has the primary responsibility for adjudicating the complaint. *See* 49 U.S.C. § 42121(b)(2)(A). A final order may be reviewed by the circuit court "for the circuit in which the violation, with respect to which the order was issued, allegedly occurred or the circuit in which the complainant resided on the date of such violation." 49 U.S.C. § 42121(b)(4)(A). In a case of complete preemption, the appropriate argument by Defendant would seem to be a failure to exhaust administrative remedies. If Congress had intended to minimize a "patchwork" of state enforcement, then following the statutorily prescribed approach would seem to serve those purposes better than adjudication by district courts. *Compare, e.g., Meyer*, 624 F. Supp. 2d at 932 *and Ulysee v. AAR Aircraft Component Serv., et. al,* 841 F. Supp. 2d 659, 673–74 (E.D.N.Y. 2011) (holding against preemption) *with Wright v. NORDAM Group, Inc.,* No. 07-0699, 2008 WL 802986 (N.D. Okla. March 20, 2008) (holding in favor of preemption).

## CONCLUSION

In removal actions, courts should resolve any doubt as to the existence of federal subject matter jurisdiction in favor of the plaintiff's choice of forum. *Schur*, 577 F.3d at 758. For the reasons set forth above, we grant Plaintiff's Motion to Remand. Since we lack subject matter jurisdiction in this case, we strike Defendants' Motion to Dismiss. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: December 19, 2012